# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

ANN DORMANI, MITCHELL W. KNOLL, DAVID RIGOL, and DOROTHEA SIMMONS, on behalf of the Target Corporation 401(k) Plan, themselves, and a class consisting of similarly situated participants of the Plan,

    Plaintiffs,

v.

TARGET CORPORATION, SCOTT KENNEDY, MICHAEL FIDDELKE, PLAN INVESTMENT COMMITTEE, JOHN MULLIGAN, COREY HAALAND, JODEE KOZLAK, BETH JACOB, JOHN DOE DEFENDANTS 1-10, and GREGG STEINHAFEL,

    Defendants.

Case No. 17-cv-4049 (JNE/SER)

ORDER

---

Michael Jason Klein, Stull, Stull & Brody; David Krause, David E. Krause Law Office; and Gregory Potrepka, Levi & Korsinsky, LLP appeared for Plaintiffs.

Jeffrey P. Justman, Steven L. Severson, and Wendy Jo Wildung, Faegre Baker Daniels, LLP appeared for Defendants.

---

    Ann Dormani and three other plaintiffs brought this action against Target's 401(k) Plan Investment Committee ("PIC") and related defendants, alleging violations of the Employment Retirement Income Security Act of 1974 ("ERISA") stemming from Target's ill-fated venture into Canada in 2013 and 2014. Plaintiffs contend that Defendants had inside information that Target's stock was artificially inflated but failed to take appropriate measures to protect the plan's participants. They allege breaches of the duties of prudence and loyalty, and of the duty to

1

monitor other ERISA fiduciaries. Defendants have moved to dismiss. For the reasons set forth below, that motion is granted.

## BACKGROUND

In January 2011, Target announced plans to open stores in Canada. The first of these stores opened in March 2013, and by the end of that year there were more than 100 Target locations in Canada. Almost immediately, the stores suffered from supply chain problems, which only grew as more stores opened over the next two years. These difficulties were widely publicized during 2013 and 2014. Ultimately, Target announced in January 2015 that it would discontinue operating its stores in Canada, having incurred billions of dollars in losses.

Plaintiffs are current or former Target employees who participated in Target's 401(k) plan (the "Plan") between February 27, 2013 and August 6, 2014 (the "Class Period"). Under the Plan, participants could choose to invest in the Company Stock Fund (the "Fund"), which comprised Target stock and a small cash reserve for withdrawal requests. The Fund is an employee stock ownership plan ("ESOP") under ERISA. *See* 29 U.S.C. § 1107(d)(6)(A).

At the core of Plaintiffs' claims is the allegation that Target stock was artificially inflated by Defendants' failure to disclose what they knew about the full extent of Target Canada's problems. According to Plaintiffs, once this non-public information became public, Target stock dropped dramatically, causing significant Plan losses. Plaintiffs allege that Defendants should have taken measures to counteract this artificial inflation before the stock price dropped, in order to minimize damage to Plan participants. Specifically, Plaintiffs assert three causes of action: breach of the duty of prudence in violation of ERISA §§ 404(a)(1)(B) and 405; (2) breach of the duty of loyalty in violation of ERISA §§ 404(a)(1)(A) and 405; and (3) failure to adequately monitor other fiduciaries and provide them with accurate information, in violation of

ERISA § 404. These allegations and claims are substantially similar to those made by Plaintiffs against Defendants in *In re: Target Corporation ERISA Litigation*, 275 F. Supp. 3d 1063 (D. Minn. 2017) ("*Target ERISA*"). Those claims were dismissed by this Court in an order dated July 31, 2017.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555 (1955)). Plausibility is assessed by "draw[ing] on . . . judicial experience and common sense." *Id*. at 679. Moreover, courts must "review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." *Zoltek Corp. v. Structural Polymer Grp*., 592 F.3d 893, 896 n.4 (8th Cir. 2010).

## DISCUSSION

Plaintiffs allege three causes of action: breach of the duty of prudence in violation of ERISA §§ 404(a)(1)(B) and 405; (2) breach of the duty of loyalty in violation of ERISA §§ 404(a)(1)(A) and 405; and (3) failure to adequately monitor other fiduciaries and provide them with accurate information, in violation of ERISA § 404. Defendants move to dismiss on the grounds that all three claims are time-barred and, even if the limitations period has not run, Plaintiffs have failed to state a plausible claim for relief.

**A. Statute of Limitations**

Under 29 U.S.C. § 1113(2), ERISA claims have a three-year statute of limitations from the time that Plaintiffs had "actual knowledge of the breach or violation." Defendants contend that Plaintiffs' claims are barred under this provision because they had actual knowledge of all of the facts necessary to bring their claims as of August 6, 2014, but did not file their complaint until August 30, 2017. Plaintiffs make two arguments against this limitations defense. First, they contend that the limitations period was tolled under *American Pipe & Construction Company v. Utah*, 414 U.S. 538 (1974). And second, they argue that even if there was no tolling, they did not have actual knowledge of the alleged breaches prior to August 30, 2014.

**(1) Tolling**

In *American Pipe*, the Supreme Court held that a statute of limitations is tolled during the pendency of a class action for purported class members who seek to intervene after class certification has been denied. 414 U.S. at 553. The Court then clarified in *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983) that the rule applies as well to putative class members who, after denial of class certification, elect to file individual suits rather than intervene. 462 U.S. at 350. In both cases, the Court stressed the importance of protecting the federal procedural interest in judicial economy and efficiency by reducing the number of actions filed protectively by putative class members seeking to preserve their claims. 414 U.S. at 553; 462 U.S. at 351.

Plaintiffs ask the Court to apply this tolling rule to the pendency of *Target ERISA*, but this would stretch *American Pipe* and *Crown, Cork & Seal* too far. First, unlike those two cases, there was no ruling on class certification in *Target ERISA*. Plaintiffs contend that *American Pipe* should apply under these circumstances as well, but there does not appear to be any authority in this circuit for extending the tolling rule in this way. *Cf. Zarecor v. Morgan Keegan & Co.,* 801

F.3d 882, 892 (8th Cir. 2015) (citing Justice Powell's cautionary observation in *Crown, Cork & Seal* that "[t]he tolling rule of *American Pipe* is a generous one, inviting abuse."). Second, even if *American Pipe* were to apply in cases where class certification was not initially denied, tolling would still not be appropriate here because, unlike in *American Pipe* and *Crown, Cork & Seal*, Plaintiffs have filed a subsequent class action, not subsequent individual claims. As the Supreme Court recently made clear in *China Agritech, Inc. v. Resh*, No. 17-432, slip op. at 7 (U.S. June 11, 2018), the efficiency rationale for tolling a limitations period in individual actions – namely, to reduce unnecessary filings – does not translate to class claims, where "efficiency favors early assertion." Indeed, to permit tolling in successive class actions would "allow[] plaintiffs 'limitless bites at the apple.'" *Id.* at 10 (quoting *Ewing Industries Corp. v. Bob Wines Nursery, Inc.*, 795 F. 3d 1324, 1326 (11th Cir. 2015)). Therefore, the *China Agritech* Court concluded, "*American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations." *Id*. at 2. For these reasons, Plaintiffs' effort to toll the limitation period during the pendency of *Target ERISA* is unsuccessful.

### (2) Actual Knowledge

Plaintiffs next argue that even if the limitations period was not tolled, their claims are not time-barred because they did not have actual knowledge of the alleged breaches or violations as of August 6, 2014. As noted above, 29 U.S.C. § 1113(2) provides that ERISA claims have a three-year statute of limitations from the time that Plaintiffs had "actual knowledge of the breach or violation." Defendants contend that Plaintiffs knew a breach had occurred by August 6, 2014, thereby placing the August 30, 2017 filing of this action outside the three-year limitation period. Plaintiffs disagree that they had actual knowledge by that date.

Under Eighth Circuit precedent, "actual knowledge" for the purpose of § 1113(2) means "actual knowledge of all material facts necessary to understand that some claim exists." *Brown v. Am. Life Holdings, Inc.*, 190 F.3d 856, 859 (8th Cir. 1999) (quoting *Gluck v. Unisys Corp.,* 960 F.2d 1168, 1177 (3d Cir. 1992)). Defendants argue that Plaintiffs' had actual knowledge by August 6, 2014, because – according to Plaintiffs' complaint – that was the point by which Target's Canada-related problems were publicly known. Pl.'s Reply at 6; Compl. ¶ 161. In particular, Defendants highlight Plaintiffs' allegation that Target's stock price fell between July 2013 and August 2014 "as the condition of Target's business, including its Canadian operations . . . were revealed to the market." Compl. ¶ 161. According to Defendants, this allegation constitutes an acknowledgment by Plaintiffs that they knew that a claim existed by August 6, 2014.

Defendants point to two recent ERISA stock-drop cases to support their position. In *Muehlgay v. Citigroup*, 649 Fed. Appx. 110, 111 (2d. Cir. 2016), the Second Circuit held that 401(k) plan participants had actual knowledge of Citigroup's breach of its fiduciary duties when Citigroup's exposure to subprime mortgages came to light in December 2008. Because the plaintiffs' complaint relied upon this publicly known information in making its allegations, the Second Circuit concluded that the plaintiffs had actual knowledge of the breach. *Id.* at 111. Similarly, in *Brannen v. First Citizens Bankshares Inc.*, No. 6:15-CV-30, 2016 WL 4499458 (S.D. Ga. Aug. 26, 2016), a district court held that the three-year limitations period began to run when, according to the plaintiff's complaint, she learned of a precipitous drop in the value of the company stock in which her ESOP had invested.

Defendants' reliance on *Muehlgay* and *Brannen* is misplaced. Although Plaintiffs do allege that "the condition of Target's business, including its Canadian operations" was publicly

6

known as of August 6, 2014, Compl. ¶ 161, this allegation merely suggests that Target's Canada-related problems in general were revealed to the market; it does not demonstrate that Plaintiffs knew "all material facts necessary to understand" that a breach had occurred. *Brown*, 190 F.3d at 859. To the contrary, there were specific facts that Plaintiffs apparently did not know at the time the limitations period allegedly began to run. For example, they were not in possession of an April 2016 affidavit from Target Canada's general counsel that allegedly revealed key information about the gravity of Target Canada's problems. Compl. ¶ 163. Likewise, they had not yet seen PIC meeting minutes that, they contend, revealed additional facts "crucial" to their claims. Pl.'s Mem. at 15. Therefore, assuming these allegations to be true, Plaintiffs did not have actual knowledge of *all* the material facts necessary to establish that a breach had occurred before August 6, 2014, even if Target's Canada-related woes had been publicly reported by that time.

In sum, Plaintiffs' claims are not time-barred. Although the limitations period was not tolled during the pendency of *Target ERISA*, Plaintiffs did not have actual knowledge of the breach or violation before August 30, 2014.

### B. Duty of Prudence Claim

ERISA § 404(a)(1)(B) requires plan fiduciaries to manage their plans with "care, skill, prudence, and diligence." Generally, a prudent fiduciary can rely on the market price of a stock in making a decision as to whether plan participants should invest in the stock of their own company. *Fifth Third Bancorp. v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014). However, a fiduciary with inside information that a stock is overpriced faces a dilemma: acting on the information may violate securities laws, but not acting on it may invite suits for breaching the duty of prudence. *See Dudenhoeffer*, 134 S. Ct. at 2472-73. Recognizing this challenge, the

7

*Dudenhoeffer* Court set forth a stringent pleading standard for breach-of-prudence claims based on allegations of inside information. Under that framework, such claims will be dismissed unless the plaintiff plausibly alleges (1) an alternative action that the fiduciary could have taken (2) that would have been consistent with securities laws and (3) that a prudent fiduciary in the same situation would not have concluded was more likely to cause harm to the fund than good. *Dudenhoeffer*, 134 S. Ct. at 2472.

The *Dudenhoeffer* standard is "very tough," "highly exacting," and "incredibly difficult to satisfy." *In re Wells Fargo ERISA 401(k) Litig.,* No. 16-CV-3405, 2017 WL 4220439 at *2 (D. Minn. Sept. 21, 2017); *Price v. Strianese*, No. 17-CV-652, 2017 WL 4466614 at *5 (S.D.N.Y. Oct. 4, 2017). This is in large part because plaintiffs must "plausibly allege that a prudent fiduciary '*could not*' have concluded that a later disclosure of negative inside information would have less of an impact on the stock's price than an earlier disclosure." *In re Wells Fargo ERISA 401(k) Litig*., 2017 WL 4220439 at *2 (quoting *Dudenhoeffer*, 134 S. Ct. at 2472). In other words, the alternative course of action must be "so clearly beneficial" that no prudent fiduciary could opt against it. *Whitley v. BP, P.L.C.,* 838 F.3d 523, 529 (5th Cir. 2016)

Plaintiffs propose six alternative actions that they contend clear the *Dudenhoeffer* bar: (1) freezing purchases of Target stock in the Fund; (2) disclosing problems regarding Target Canada; (3) diverting contributions from the fund into cash reserves or other short term investments; (4) sending letters to participants encouraging them to diversify their holdings; (5) resigning as plan fiduciaries; and (6) seeking guidance from regulators and/or outside experts. These are the same six alternatives that Plaintiffs proposed – and that the Court rejected – in *Target ERISA*. Plaintiffs make new allegations with respect to at least three of these alternatives, but all of the claims remain insufficiently plausible to survive Defendants' Rule 12 motion.

### (1) Freezing Purchases of Target Stock

Plaintiffs allege that Defendant fiduciaries should have ceased making purchases of additional Target stock. The Court's order in *Target ERISA* concluded that this proposed alternative failed to satisfy *Dudenhoeffer* because it was too general and conclusory, and because it failed to recognize that freezing purchases could easily do more harm than good by sending a negative signal to the market, causing a drop in Target stock's value. 275 F. Supp. 3d at 1085. Other courts have rejected the "freeze" alternative for the same reasons. *See, e.g., Whitley,* 838 F.3d at 529; *In re Wells Fargo*, 2017 WL 4220439 at *4.

Plaintiffs appear to have augmented their freeze argument from the prior case with three new paragraphs in their complaint. Compl. ¶¶ 175-177. However, two of these paragraphs are merely conclusory assertions that ceasing purchases would not have sent a negative signal to the market. Compl. ¶¶ 175, 176. Meanwhile, the third alleges that because Defendants' April 2017 purchase freeze did not affect Target's stock price, a similar freeze during the Class Period would have been a viable alternative. Compl. ¶ 177. But ERISA duties are not evaluated from the "vantage point of hindsight." *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 918 (8th Cir. 1994) (quoting *Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984)). Even if Plaintiffs are correct that the 2017 freeze did not harm Target stock, this is outside the scope of what a reasonable fiduciary during the Class Period would have known. Therefore, because a prudent fiduciary at the time could have concluded that a freeze would cause more harm than good, Plaintiffs' proposed alternative fails to clear the *Dudenhoeffer* bar.

### (2) Disclosing Target Canada's Problems

Plaintiffs next assert that Defendants should have publicly disclosed negative information about Target stock in order to help correct its artificial inflation. The Court's prior order rejected

9

this idea because, like the freeze proposal, it was based largely on conclusory assertions. *Target ERISA*, 275 F. Supp. 3d at 1087-88. The prior order also found that Plaintiffs' disclosure theory rested on hindsight: it presupposed that a reasonable fiduciary would know that the Fund would be a net purchaser of Target stock during the Class Period (i.e., would have known that it would have spent more than it made on the stock), such that a corrective disclosure would not do more harm than good. *Id.* But a fiduciary could not know this based on contemporaneous information, and as a result, it would have been reasonable to conclude that disclosures would tip the scales toward harm. *Id.*

Plaintiffs attempt to remedy these shortcomings with additional allegations in their new complaint. *See, e.g.*, Compl. ¶¶ 186, 191, 199. But none of these changes cure the problems identified in the Court's prior order. Most of the corrective disclosure allegations remain too generic and conclusory to satisfy *Dudenhoeffer*. *See, e.g.*, Compl. ¶¶ 186, 199. And while Plaintiffs do provide evidence that the Plan was a net purchaser during 2014 and 2015, Compl. ¶ 64, they do not show that this was the case during the actual Class Period itself. Instead, Plaintiffs argue that PIC members should have known, based on real-time data, that the Plan was *shifting* to net-purchaser status during the Class Period and taken corrective action. Pl.'s Mem. at 17-19. But even if PIC members did know this, Plaintiffs once again fail to show that corrective disclosure would have been the only viable alternative action. The Fifth Circuit recently rejected this kind of corrective disclosure argument in *Singh v. RadioShack Corp.*, 882 F.3d 137, 149 (5th Cir. 2018), and district courts have found it equally unpersuasive as well. *See, e.g., Martone v. Robb*, 2017 WL 3326966 at *7 (W.D. Tex. Aug. 2, 2017). There, as here, a reasonable fiduciary could have believed that disclosing negative information about Target stock would do more harm

than good (e.g., via market overcorrection). Accordingly, Plaintiffs' argument here along these same lines fails to satisfy *Dudenhoeffer*.

### (3) Diverting Contributions

Plaintiffs' third alternative is that Defendants should have diverted participant contributions to the Fund's "cash buffer" rather than continuing to invest in Target stock. The Court's prior order rejected this proposal for being too general, and for its failure to address the "investment drag" problem – i.e., the prospect that cash stored in a buffer will return less than if it were invested in stock. *Target ERISA*, 275 F. Supp. 3d at 1086-87. As explained there, a reasonable fiduciary faced with that rock-and-a-hard-place dilemma could easily conclude that opting for a cash buffer diversion would create more harm than good. *Id.*

Plaintiffs introduce a number of new arguments in their current complaint in an effort to address these problems. *See* Compl. ¶¶ 178-83. Once again, however, the allegations fall short of the *Dudenhoeffer* requirements. Most significantly, Plaintiffs appear to acknowledge that using the cash buffer would have created drag, but they contend that the Defendants could not have been sued over this choice because the drag would have been "well-reasoned and intended to protect the plan." Pl.'s Opp'n Mem. at 36. This scratches the wrong itch. The dispositive issue is not whether the decision to divert to a cash buffer was a well-intended attempt to avoid suit, but whether no reasonable fiduciary at the time could have concluded that such an option would have been more harmful than beneficial. Investment drag is a concern that clearly could have led a reasonable fiduciary to conclude that its potential harm outweighed its benefits, as the Court's prior order made clear. *Target ERISA*, 275 F. Supp. 3d at 1086-87. Therefore, Plaintiffs' renewed diversion alternative does not survive a *Dudenhoeffer* analysis.

### (4) Remaining Alternatives

Plaintiffs' three remaining alternative actions – sending letters to participants encouraging them to diversify their investments, resigning as fiduciaries, and seeking guidance from government regulators and outside experts – all failed to clear the *Dudenhoeffer* bar in the Court's prior order. *Target ERISA*, 275 F. Supp. 3d at 1089. Plaintiffs appear to have made only minor or cosmetic changes to those allegations in their current complaint, and their response brief makes only a passing attempt at supporting these claims. Pl.'s Mem. at 37-38. The shortcomings that the Court identified previously as to these three alternatives remain shortcomings now, and each of the alternatives once again falls short of the *Dudenhoeffer* standard.

### C. Duty of Loyalty Claim

The second count of the complaint alleges that Defendants breached their duty of loyalty under § 404(a)(1)(A). In brief, Plaintiffs' loyalty claim centers on three allegations: (1) that Defendants failed to engage independent fiduciaries who could make judgments about the Plan's investments, (2) that they misrepresented or omitted information related to Target stock when communicating with plan participants, and (3) that they knowingly participated in each other's failure to protect the plan from losses. Compl. ¶¶ 239, 240, 244. The Court's order in *Target ERISA* dismissed the loyalty claims on the grounds that they were derivative of the prudence claim, which had failed to satisfy *Dudenhoeffer*. 275 F. Supp. 3d at 1090 (citing *Brown v. Medtronic, Inc.*, 628 F.3d 451, 461 (8th Cir. 2010) (holding that duty of loyalty claims could be dismissed if they were derivative of insufficiently pled prudence claims)). The order also concluded that even if the claim was not derivative, it would still fail because it did not set forth

plausible allegations that Defendants were conflicted or that they placed their interests above those of the Plan participants. *Target ERISA*, 275 F. Supp. 3d at 1090-93.

Nothing in the current complaint fixes these problems. The most significant addition to the loyalty breach claim is a set of allegations that identifies with a bit more particularity which communications allegedly contained misinformation that was left uncorrected by Defendants. Compl. ¶ 240. Specifically, Plaintiffs now contend that the communications included Summary Plan Descriptions ("SPDs"), which incorporated by reference Target's filings pursuant to certain section of the Exchange Act. Compl. ¶ 240. Plaintiffs argue that to the extent that Defendants knew that these filings contained inaccuracies, they breached their duty of loyalty by relaying that misinformation to Plan participants via the SPDs. But this fails to resolve the problem that the Court identified in *Target ERISA*: Plaintiffs still have not identified a single specific instance where Defendants affirmatively misled Plan participants. *See Target ERISA*, 275 F. Supp. 3d at 1092. They merely contend that "to the extent that" Defendants knew or should have known that the filings included inaccuracies, they breached the duty of loyalty. Compl. ¶ 240. But this speculative posture – suggesting that *if* Defendants knew there were inaccuracies, not alleging that they *did* know this – is not enough to establish a plausible loyalty breach claim that withstands Defendants' Rule 12 motion.

### D. Duty to Monitor Claim

As in the previous suit, Plaintiffs also allege that Defendants breached their duty to monitor PIC appointees, ensure that those appointees knew the full extent of Target's Canada problems, and remove appointees whose performance was inadequate. Compl. ¶¶ 255-266. The Court dismissed that count in *Target ERISA* because there was no underlying breach of ERISA

13

duties. 275 F. Supp. 3d at 1093. Plaintiffs' current monitoring claims replicate their previous monitoring claims, and fail for the reasons outlined in the Court's prior order. *Id.*

## CONCLUSION

Plaintiffs' claims cannot withstand the motion to dismiss. Although they are not time-barred, none of the claims are sufficiently plausible to survive a challenge under Fed. R. Civ. P. 12(b)(6). Accordingly, based on the foregoing, and all the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' Motion to Dismiss [ECF No. 34] is GRANTED.

2. Plaintiffs' Complaint [ECF No. 1] is DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 15, 2018                                **s/ Joan N. Ericksen**
                                                    JOAN N. ERICKSEN
                                                    United States District Judge